## Huber's Assigned Estate.

*Assignment for creditors—Judgment—Notice—Trust and trustees.*

An assignee for the benefit of creditors cannot sell the real estate assigned to him to the assignor himself, and accept as purchase money a judgment confessed by the assignor to a third person to secure a trust fund, where it appears that the attorney for the assignee and the person to whom the judgment had been confessed in trust, all had knowledge that the judgment had been given to secure trust money.   In such a case evidence that the judgment had been confessed to protect trust funds is not a collateral attack on the judgment itself.

Argued Nov. 10, 1902.   Appeal, No. 16, Oct. T., 1902, by Jacob H. Heidlebach, from order of C. P. Lancaster Co., Trust Book, No. 16, page 351, dismissing exceptions to auditor's report in Assigned Estate of J. Milton Huber and Wife.   Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of Owen Bricker, Esq., auditor.

On the exceptions, LANDIS, J., filed the following opinion:

The only real question which requires investigation in this case is that which is raised by the first four exceptions to the report of the auditor, and it relates to the surcharge made against the accountant of $1,146.90.   The auditor has found that a certain judgment for $1,050, and which, with interest, now amounts to the surcharge above mentioned, was confessed by J. Milton Huber to C. Reese Eaby, in trust, for the protection of certain trust funds held by the said Huber as the committee of Annie Kneisley.   If that be so, then we are of opinion that, under the facts in this case, he has arrived at the correct results.

The judgment was entered in this court on June 3, 1896, to

612, (1902).]                    Opinion of Court below.

April term, 1896, No. 571.   The assignor testified that he
went to Mr. Eaby, as his counsel, and told him that he had
some trust money of Annie Kniesley and that he wanted to
protect that trust;. that he also spoke to him about Mary
Hastings, and that he then gave Mary Hastings a judgment
for $2,000, and executed the judgment, which is the subject of
this controversy, to protect the Kneisley trust.   He says that
he did not, at that time, know just exactly how much was due
of these trust funds, and whatever balance remained over, if
any, was to be held by Mr. Eaby in trust for his use.   When
Mr. Eaby was first examined, his testimony was, that this judg-
ment was for the protection of the money due to Mary Hast-
ings ; but, subsequently, he supplemented it by saying that he
was incorrect in making this statement, and that the judgment
bond to him as trustee was given to protect, not the Hastings
money, but that of the Kniesley trust estate, Mary Hastings
being protected by another judgment given at the same time
for $2,000 to her.   The assets of the estate consisted chiefly of
real estate.   The assignee exposed it to public sale, and sold off
it a tract of about eighteen acres to J. Milton Huber, the as-
signor, for the sum of about $4,050, he buying for himself and
in his own name.   The question then arose as to how Huber
was to pay for this land, and A. C. Reinoehl, Esq., who was the
attorney of the assignee, having demanded security for the pur-
chase money, was told that Huber had arranged to get $3,000
in the following spring from Mary Hastings on a first mort-
gage, and Rienoehl agreed that, so far as this money was con-
cerned, it was satisfactory, but he wanted security, in some
shape, for the balance.   He then suggested that this disputed
judgment be transferred to Jacob Heidlebach, assignee, as
collateral security.   On October 13, 1897, Eaby, as trustee,
transferred the judgment to " Jacob Heidlebach, assignee of J.
Milton Huber, as collateral security, for the payment of the
purchase money of eighteen acres of land, in West Lampeter
township, sold by J. Heidlebach, assignee, to J. Milton Huber,
September 24, 1897."   That Reinoehl had some knowledge as
to how this judgment was held by Eaby is shown by his exami-
nation of Eaby at one of the meetings of this audit.   Among
other questions, he put the following :  " Now, Mr. Eaby, at the
time when we were arranging to secure the $1,000 balance by

J. Milton Huber of the eighteen-acre tract, was anything said by you or Milton Huber in regard to my inquiries as to its validity, that it was held in trust by you for Milton Huber; at the time when you spoke to me about securing the $1,000 balance of purchase money on the eighteen-acre tract, do you recollect your statement being made by you or Milton Huber to satisfy me about the judgment being good, that you held it in trust for him, first, to secure him against any trust moneys that he might have in his hands, and, after that, you were to hold it as a trust fund for his personal use, to be reserved in case he would be compelled to make an assignment? " To which Mr. Eaby responded: " Yes, sir, unquestionably; I don't understand that question about being reserved for his personal use. At that time, it was to be held by me in trust for the payment of any trust moneys that were due by J. Milton Huber." Another question was: " Now, then, further, Mr. Eaby, whether it wasn't stated between you and me that it was given expressly with the understanding that, in case of an assignment, which he was afraid of, you were to keep that fund in your hands for his use ? " To which Mr. Eaby responded : " That was the very object, for his use, if not needed for trust creditors, and under no consideration was it to pass." The only evidence, outside of this, presented in the case, was that of Jacob Heidlebach and John Harmon, who testified that Huber, at sometime, had told them that he had $1,200 with C. Reese Eaby, which he wanted to transfer over to Heidlebach to put in this tract of land for his wife. There was no evidence that Huber ever owed his wife anything, nor was it shown that, at the time the judgment was transferred, any inquiries were made as to the ownership of the judgment by Heidlebach or any one for him. Under this practically undisputed testimony, the auditor concluded that it was clear that the judgment had been confessed for the protection of the trust estate of Annie Kneisley, and that, as Reinoehl, who was Heidlebach's attorney, had knowledge that the judgment was given to secure trust moneys, Heidlebach, himself, was affected by this knowledge of his attorney, and he could not hold as collateral the judgment against the parties for whose benefit it had been actually confessed.

The impression seemingly upon the mind of counsel for the exceptant is, that an attempt is here being made to attack the

validity of the judgment in a collateral proceeding before the auditor. It need hardly be stated that no such question here arises. Everyone must admit, under the well settled rules of law, that an auditor cannot inquire into the validity of a judgment regular upon its face (Dyott's Estate, 2 W. & S. 557; Appeal of the Second National Bank of Titusville, 85 Pa. 528), unless it has been fraudulently given by collusion between the debtor and the plaintiff in such judgment, for the purpose of hindering and delaying creditors, when it may be attacked collaterally by the creditors intended to be defrauded (Dougherty's Estate, 9 W. & S. 189; Meckley's Appeal, 102 Pa. 536; Harbaugh v. Butner, 148 Pa. 273; Baird v. Ford, 152 Pa. 641; Page v. Williamsport Suspender Company, 191 Pa. 511); and we may go further, also, in his contention, and admit that the bona fide assignee, for valuable consideration of a judgment confessed to indemnify the plaintiff, while taking it subject to all the defenses of the obligor against the obligee, does not take it subject to the secret equities of third persons: Davis v. Barr, 9 S. & R. 137; Appeal of Mifflin County National Bank, 98 Pa. 150; Barker's Estate, 1 Lanc. Law Review, 313. But it is equally well settled that an auditor may receive testimony to show that, since its rendition, the judgment has been paid, or otherwise satisfied (Borland's Appeal, 66 Pa. 470), and he may even, at the instance of general creditors, receive evidence to show that a judgment given for one purpose has been fraudulently used by the plaintiff for another and different purpose: Stark's Appeal, 128 Pa. 545. If, then, the judgment was given for Huber's own benefit, it would be fraudulent and absolutely void; for, in such case, it would be an attempt on the part of the debtor to obtain a personal advantage to himself at the expense of his creditors, by conspiring with plaintiff to protect him against them. No debtor can thus preserve a secret lien for his own benefit; and, if the judgment was absolutely void in its incipiency, a transfer by the plaintiff, who was cognizant of the fraud, could surely not restore it to life. If, on the other hand, it, by any construction, could be considered as a trust for Huber's wife, it would be equally inefficacious. The law does not presume the existence of a separate estate in the wife (Eavenson v. Pownall, 182 Pa. 587), and a wife, in a contest with creditors whose debts existed when the judgment was

confessed, must establish that it was given to her bona fide to secure a debt due to her from her husband for money of her separate estate (Wilson v. Silkman, 97 Pa. 509) ; and, in the absence of such proof, the judgment must be deemed fraudulent as to such creditors : Billington v. Sweeting, 172 Pa. 161. Even a judgment confessed to a wife by one who is neither indebted nor about to engage in a hazardous business, is fraudulent as to creditors, if confessed for the purpose of protecting the wife in case her husband should afterwards become embarrassed : Shank v. Simpson, 114 Pa. 208. As, therefore, there is no evidence here presented to show any estate in the wife, or any indebtedness due to her, if such a trust was created, it was fraudulent and void, and the rights of the assignee could not, by virtue of a transfer, rise higher than hers.

If, then, the judgment was not confessed to C. Reese Eaby in trust for either J. Milton Huber or his wife, and, if, as we have just said, it would be absolutely void, even if so confessed, if any validity remains in it, it would be by virtue of it being a trust for the protection of the Kneisley estate. Mr. Eaby could not be considered in the light of an active trustee. It was purely a dry trust, and, therefore, he had no right to divert the judgment from its original purposes for the benefit of the defendant in the judgment. If Heidlebach had any title, it must have been through Eaby as trustee of the Kneisley estate, and the transfer of the funds of that estate to him as collateral for purchase money due to him as assignee by Huber, the defendant in the judgment and his assignor, could, under no circumstances, be maintained. In order that we may keep before us a perfect understanding of the situation, we must never lose sight of the fact that he who is the exceptant in this case and the claimant of the judgment is the assignee of the assigned estate who sold the land to the debtor, and whose attorney, at the time the judgment was transferred, had information not only from the record that Eaby was a trustee, but had also positive information that it was held to secure trust moneys for which J. Milton Huber was liable. The knowledge of his attorney was his knowledge. The assignee had no right to ask for, nor had Eaby any right to give, the judgment, with the knowledge of these facts. Nor could Heidlebach, the assignee, hold the judgment against the creditors, even though the claim of the Kneisley

612, (1902).] Opinion of Court below—Opinion of the Court.

estate could not be made out. An assignee of a bond, with notice of the illegality of the contract which forms the consideration, will not be protected by even a declaration of no set-off : Duquesne Bank's Appeal, 74 Pa. 426 ; Griffiths v. Sears, 112 Pa. 523.

Under these circumstances, we do not see how the auditor could have made any other distribution than the one he did. We are perfectly satisfied with the result, except, we think that, in the calculation, a small error of $10 was made, which, if we are right, should hereafter be corrected. We, therefore, overrule the exceptions to the auditor's report and absolutely confirm the same.

Exceptions overruled.

*Error assigned* was the order of the court.

*B. F. Davis*, for appellant.

*W. U. Hensel*, for appellee.

PER CURIAM, December 13, 1902:

The various questions involved in this appeal were carefully passed upon by the court below in a well considered opinion, dismissing the exceptions to the report of the auditor making distribution of the balance in the hands of the assignee. The questions involved are all fully discussed and the authorities, upon which the several conclusions rest, are cited. We can add nothing, by further discussion, which would make more clear the grounds upon which the conclusions of the court below rest. We are all of the opinion that the judgment should be affirmed.

The ninth assignment of error here relates to the admission of the evidence of C. Reese Eby, Esq., by the auditor. It does not seem to have been raised in the court below but the grounds upon which it was received are fully vindicated in the opinion of the court below as to the contention of the appellant that the assignment by Eby to Heidlebach could not be collaterally attacked.

The assignments of error are all overruled and the decree affirmed.